Good morning. May it please the court, my name is Todd Norris. I represent the Plaintiff Appellant, the Board of Trustees of the Laborers Health and Welfare Trust Fund for Morgan, California. I understand I have 15 minutes and I would like to reserve 5. Counsel, before you use those 15 minutes, I would like to ask a factual question if I might. Can you point me to the evidence in the record that indicates that the Doctors Medical Center received an assignment from the patient? That would be an exhibit and the declaration of Edward Smith, I believe, who explains that they paid the claim based on the assignment. The record taken as a whole, what you will see is that the hospital was contractually obligated to obtain an assignment from the patient under its own contract with Blue Cross. It was contractually obligated to do that. When it wanted to be paid, it represented that it had obtained that assignment. The trust fund then paid the claim based on its understanding that an assignment had been obtained. And the hospital accepted that money, knowing that it couldn't accept that unless it had an assignment from the patient. I think taken on the whole, the record is clear that the parties have acted as though there was an assignment. And although the actual document itself was not in the record, clearly the parties acted as though there was. And there is evidence from Mr. Smith's declaration explaining that this was a claim paid based on an assignment. But is that because of an entry on a computer? That's right. What is that, the UB-90 or something? I believe that's correct. That form is not part of the record, but that would be my understanding of how this occurred. The computerized claim form that the hospital submits to the plan on which the review is made. That's correct. And I believe that is how the plan also finds out what types of procedures are used, etc., etc. And for ease of administration and to be more efficient, they don't require that everything be backed up with documentation. They take the hospital at its word when it says we got the assignment. In the record, I found that they claimed that similar report, but as you just stated, no direct evidence of the assignment. Is that correct? That would be what I would consider to be the direct evidence. All right. Thank you. Okay. If there was an assignment, is that fatal to the contention that there was also a contract separate over and above what the claim provides? In this case, I believe it is because of the nature of the claim, but it is not necessarily fatal. And why is it in this case because of the nature of the claim? Because the nature of this claim, this is not contrary to the way the hospital has characterized this as a dispute over rates. This is actually a dispute over the hospital's right to be paid for the patient's last day at the hospital. So just a straight coverage dispute. The last day is excluded because it was medically unnecessary. Right. And Blue Cross made that determination. Blue Cross with our contract, the trust fund's contract with Blue Cross, requires Blue Cross to determine whether it's medically necessary. Blue Cross's contract with the hospital provides that if the hospital doesn't like Blue Cross's determination, the hospital can arbitrate that with Blue Cross. And that is a contract between the hospital and Blue Cross that we are not a party to. And, in fact, our agreement with Blue Cross says that we have no standing to negotiate the terms of that contract, no standing to interpret them. We must accept what Blue Cross says. And that's what we did in this case. Blue Cross priced the medically necessary services, and we did not contest either the price or the fact of whether they were medically necessary. If Blue Cross says, no, you don't have to pay it, the plan won't pay. But if it goes through this dispute resolution mechanism and then agrees to pay, the plan will pay. Well, not necessarily. Because if it's a service that the plan says is not covered under our plan, then even though Blue Cross has priced it, we will not pay it. I don't think maybe I didn't make my question clear. My understanding is that you are captive in the sense that you have delegated to Blue Cross the determination of medical necessity, and the plan will abide by whatever the decision is by its administrator as to whether the last day was medically necessary. Am I misunderstanding? That is correct. On the question of medical necessity, Blue Cross has the personnel that has that expertise and makes that determination. Okay. So is your answer to my question then, if this alternate dispute resolution mechanism is invoked in the separate agreement between Blue Cross and the hospital, and ultimately Blue Cross changes its position and agrees that the last day was medically necessary, will the plan pay? Yes. Okay. That's correct. Okay. So I think where the court went wrong below or where things went wrong was that in the Aetna v. Davila case, which is a U.S. Supreme Court 2004 case, the court said that in order to have ERISA preemption, two things have to be true. This is ERISA preemption for purposes of removal. There are various kinds of ERISA preemption. This is removal preemption, correct? In this case, I believe it would be the same test. I don't think so. Meaning the question here is whether the only question in front of us is really a tiny little question, and that is was this properly removed from state court, correct? Well, this was an arbitration. The hospital demanded arbitration, and we filed suit to have the arbitration enjoined. So this is kind of an odd procedural posture, right, that the trustees rushed, I don't want to say rushed, but the trustees filed to stop an arbitration that was otherwise going to go forward under this separate contract between the hospital and the administrator. That's correct. And it is my understanding that the Aetna v. Davila case, which says that you have to have two things in order for there to be ERISA preemption, is one, you have to, the claimant could, it has to be true that the claimant could have proceeded under ERISA, and also there has to be a lack of an independent claim. And I think that the court below should have made a determination on the assignment. I believe the court could have on the record said that there was in fact an assignment, but I also believe that the court could have said, well, given the nature of the claim being asserted, there cannot be a claim unless there was an assignment. So for purposes of preemption, I'll assume there was an assignment, because you can't assert this claim if there wasn't one. But I don't understand. Why are you trying to enjoin this alternative dispute mechanism if you told me earlier that the plan will pay if the result of that proceeding is that the last day was medically necessary? Because we are not the correct party to be arbitrating medical necessity. Blue Cross is the party that the hospital should have been arbitrating medical necessity with. Then why didn't you simply ask for, I don't know if this is possible, but just to dismiss the plan trustees from that proceeding? I guess that would be a motion that you would make in state court. Well, frankly, I believe we are entitled to a federal forum to decide the perimeters of ERISA, and I believe the federal courts are in a better position to do that and should be doing that rather than having arbitrators decide, for example, whether this claim truly is a claim independent of ERISA. But in order to have, and I tangled the procedural posture of this case with the previous case, but in order to have subject matter jurisdiction under Magistrate Chen's analysis, the question really is whether or not there's a federal defense improperly anticipated. Correct? I'm not sure if I understand that question, but I might. Well, there's a well-pleaded complaint rule. If you're going to have federal question jurisdiction in a federal court, you have to rely on what's in the complaint, and the complaint cannot improperly anticipate a defense. And a defense of preemption allows, let me say it this way, there's an exception to the well-pleaded complaint rule for complete preemption under ERISA. So the question is whether or not the claim, so there is no possibility of a state claim here. Is that the posture in which we now are? I believe that the claim that is asserted on the face, the hospital has conceded, and the arbitration demand states that it's seeking $14,528, which is the price for the patient's last day in the hospital. And I believe that that's a claim for benefits under the plan. If that right exists, it springs from the plan, not from the CCHA, which the hospital would like to say. I'm running past the five minutes, but let me ask you one other question. This is a relatively small amount of money, and I'm sure the attorney's fees by now far exceeded that. Why wasn't this? Is this a part of a pattern, and so you're trying to get this settled in some way? What's going on here? That is right. We would like the federal courts to have a clear guidance on where the line is drawn on these ERISA claims, and we believe that if you look at the crux of the claim here, and you compare it to the Blue Cross versus anesthesia case, this is not that case. That case was about rates, and it was about rates adjustments. The Blue Cross made in three different years, and so the hospital actually sued Blue Cross. They didn't sue the plan. Here they're suing the plan saying that it's about rates, but it's not about rates. It's about the right to be paid. And the plan, we can't have resources depleted this way time after time while a hospital or a provider goes into an arbitrator and tries to dress its claim up as though it's something other than a claim for benefits. So that's my understanding. That's the best answer I can give you as to what this is about. Why don't we hear from the other side, and then you have saved some time. Okay. Good morning, Your Honors. Ralph Helton, appearing on behalf of DMC Modesto. Initially, Your Honor, I'd like to address the issue of assignment. It seems that it was brought up both in the lower court as well as in this court. I think initially it has nothing to do with what we're talking about here, because we're talking about subject jurisdiction. But I also think that the definition that's being used as assignment is not the correct definition. The assignment that I'm hearing from the courts deals with if a patient assigns their rights against an ERISA plan to go after the ERISA plan for certain amounts of money. The assignment that goes on within the health care industry is not the same. The assignment that takes place – May I interrupt here? Yes, ma'am. Because I was really sort of confused about your theory of the case. How could the hospital have submitted a bill to the fund without an assignment? Well, Your Honor, the purpose of the assignment is to permit the hospital to collect directly from whoever the payer is. It's not assigning the patient's benefits, only the right to collect directly from the payer. That's all this assignment is that deals within the hospital industry. It is not an assignment to collect on the benefits. Only the payment is the issue that we request an assignment for. I fail to see the difference here. Well, there is a difference, because to take the assignment of the benefits would mean that we would then be to go against the ERISA plan to collect whatever those benefits are. We're not doing that. What we do here is we have a contract. In this particular case, the contract is directly with Blue Cross, and it's peripherally with the plan or the payer in this case. And so we're collecting on the agreement of the rate sheet that is attached to that agreement between the hospital and Blue Cross. What we seek from the patient is to write to collect that money or those sums directly, and not that they be paid to the patient and then the patient pay them to us. But we are not pursuing their benefits, and from our conversation with the plan, or in this case with Blue Cross, we initially find out if there is any coverage, and if there's any limitations on those coverage, such as copay or deductibles, that we need to be aware of that we should be going after the patient for instead of going after Blue Cross or the plan. That's the distinction. And I think that's a very important distinction based on both the lower court and this court. They keep asking the same question about whether there was an assignment. This is not the type of assignment dealing with benefits. This is solely the assignment as to who should be paid directly. I don't follow that where the dispute at heart is nothing more than a medical necessity dispute over whether the last day of service should have been paid for. A different issue, and I agree with the Justice on that. This counsel just stood up, and you asked him the question, if Blue Cross told you to pay that last day, would you pay it? Yes, we would. So they don't even have to look at the plan to make a determination as to whether the money is owed or not. They solely rely upon Blue Cross. Well, but isn't that yet a third contract? That's a contract between the plan and Blue Cross for how Blue Cross will administer the benefits under the plan. Am I right? Well, Your Honor, the way the system has presently ---- Is there a third contract? No, there's two contracts. Two contracts? Yes, Your Honor, not three. Okay, so one contract is between the plan and the patient? Okay, you're right. There are three. I stand corrected. There are three. One between the plan and the patient. One between the plan and, in this case, Blue Cross. One between Blue Cross and the hospital. And as I understood counsel's answer to my question, the obligation to pay arises under that third contract between the plan and the administrator, because the medical necessity determination has been delegated by the trustees who are not medical professionals to Blue Cross, who presumably has the expertise to know whether or not this was medically necessary. They hire medical directors, and the medical directors review those records, and they make their own determination, which is not necessarily compatible with the treating physician. And we constantly run into this issue on our ---- This is a regular happening. We fight with Blue Cross on these on a regular basis. The distinction here is that we have an ERISA plan who's the ultimate payer. Even though it's Blue Cross that we're dealing with, even though Blue Cross is making that determination, the ultimate payer is the plan. But the plan documents have no effect on whether we're going to be paid or not. The defect, the only effect on whether we're going to be paid or not, is whether we can get Blue Cross to agree with us that it was medically necessary or not. Or we go to an arbitration, because we believe in cost containment also. We go to an arbitration so we can contain those costs. And at the arbitration, we have an arbitrator listen to the medical director from Blue Cross, listen to the treating physician, and have to make an independent determination, which in some ways is ludicrous, because the arbitrator doesn't have anywhere near the medical experience either one of those two doctors do, but they make the ultimate decision, and then all the parties are bound by it. And in this case, what would have occurred would have been there would have been an arbitration, the medical director from Blue Cross would have come in, the treating physician would have testified, the arbitrator would have made a decision, and either the payer would have been obligated to pay, because Blue Cross would have had to have changed its decision about medically necessity, or we would have lost and we would have walked away with nothing. Well, then you would have turned and gone after the patient. We could not. That's another aspect of this whole thing. According to the CCHA, what occurs is that unless we get an explanation of benefit, which you're all I'm sure familiar with, we all get them, and it states that it is patient responsibility, we cannot pursue the patient. In this case, the OB that came from the plan stated they were only going to pay X dollars, even though X plus dollars were owed, but it didn't show that that differential was patient responsibility. So, therefore, we can't pursue the patient. It's a limbo amount of money, and so we need to find out. But isn't the EOB issued in conformance with the ERISA plan? The EOB in this case was issued in compliance with the CCHA based upon the adjudicator, which was Blue Cross. The adjudicator made a decision that X number of days were covered and that one day was not going to be covered, instructed the payer to pay pursuant to the CCHA those days and only those days. So it had nothing to do with the plan. And it can't have anything to do with the plan, because counsel just told you, if Blue Cross told them to pay, they would have to pay. I guess what's confusing me about the law in this area is that I understood Congress's intent when it passed ERISA to provide for a uniform system of the resolution of claims disputes that arose under the administration of these plans. And perhaps what's happened is that industry practice has shifted so that the congressional intent is no longer applicable, because Congress wasn't contemplating three-way contracts when they enacted ERISA. Is that what's happened? Even our industry wasn't contemplating three-way contracts, and that's why we're having these lawsuits. This particular firm, I've had five or six cases with the same issue. They refuse to pay. They represent a union. They're not going to pay. But it goes back to what Justice initially had talked about earlier about how is subject jurisdiction determined. It's determined upon relationships. The only three relationships which would apply to my understanding of ERISA as it presently stands is you're either a beneficiary, a fiduciary, or a the person, the patient, the actual patient. And we are not any of those three. And none of those three could file a lawsuit, a state court lawsuit, whether it be an arbitration or a state court action, under the CCHA that we filed it under. Only we or Blue Cross could do that. So it is not an ERISA issue. It doesn't get to the subject jurisdiction. It does not matter whether there's an assignment or not, because it's not the type of assignment that would invoke ERISA. And even if it was, in our case, we did not exercise it under the assignment. We exercised it under a state court action. So is the only claim dispute mechanism in the ERISA plan one that would be invoked if the patient had a dispute with the trustees over whether or not this last day would be paid to the patient? Yes. If they would have been issued an EOB, this particular case would have been returned to the hospital. The hospital have different attorneys who pursue patient recovery. And they would have filed a suit against the patient. The patient would have been very upset. On the assignment, right? No, no, no, no, no. What would have occurred is when that patient, if this particular patient is a different patient because he was an emergency patient and we can't get him to sign all that, but assuming that we had that assignment that we're typically get the right to pay, it also includes language that if your insurance company doesn't pay this, you're individually responsible. So what would happen is this case would have been reverted back to the hospital, would have gone to patient recovery. Patient recovery attorneys would have filed a suit against the patient, and I at that point would guarantee you the patient would then file an ERISA action against the plan, and then all that would come into play. But the hospital would have never filed an ERISA action under these circumstances. You know, gentlemen, this is a complicated area because I've been dealing in health care for somewhere over 20 years. I have an MBA in health care. And every time my preference is to deal with arbitrators because we deal with them over and over and they get to grasp the whole lingo and everything that goes on in health care. Every time we get a case of jams where we get a retired judge, we have to educate them because it's not something people are familiar with, even though it affects us in our everyday life. It's just a different animal. That's all I can tell you. Single payer, anybody? Say again, please. Single payer, anyone? I have to agree with counsel on that. I mean, the hospitals right now, statistics show that what hospitals receive is barely above what their costs are. Because when you take into consideration indigent care, you take into consideration what Medicare and Medi-Cal pay, which are below that cost line, the only monies or possibility of any profit is when we have contracts with payers. And a contract with Blue Cross is not a good contract for a hospital. They are such a big player in California that they get the best rates. And so then they enter into agreements with plans. They charge plans to access this contract. So they make money off the plans, and the plans get a discount they could not get otherwise by entering into this agreement with Blue Cross. So it goes round and round. If we had a flat rate, similar to what you're talking about, if it was just a flat rate, I think everybody would be much better off, but that doesn't exist. I'm sorry I took so much time there. Oh, no, it's still your time, and I have to make a comment here. The reason the Supreme Court allowed for preemption removal in ERISA cases, which ordinarily would not, that is to say any defense is not ordinarily anticipatable, and if it's only a defense, it stays in the state court, was based upon the presumed expertise of federal judges in dealing with ERISA. Well, if it's a comparative question, do the federal judges know more about ERISA than the state court judges, I think that's right in the same sense that my dog knows more about certain things than my cat. But my dog is not very well educated. And the federal courts, we struggle with this stuff. This is too hard for us. I think when they get into the ERISA arena, when they're interpreting a planned document, I understand why they're doing it. That's a particular arena that the Congress has set forth under ERISA. But that's dealing with that document and only that document. And that may be something that federal court judges have more expertise on, but that's not what we're dealing with. We're dealing with a variety of contracts that people aren't aware of, how many contracts exist to get health care for a particular patient. We have multiple contracts, and we have a system that is broken, but that is also has its own, I guess, idiosyncrasies, that unless you work in it long enough, even after you work in it long enough, you only understand a portion of it. You certainly don't understand all of it. Thank you. Thank you, sir. Thank you. Thank you, ma'am. Thank you, counsel. If I may, I'd like to clarify. I was asked whether in that arbitration proceeding between the hospital and Blue Cross, if a medical necessity determination was made, would we pay? And my understanding of the question at that time was that if that were the only issue, and that would be yes, we would accept Blue Cross's determination on medical necessity. We would, however, have to look at the plan to make sure that the procedure was covered. For example, you had mentioned sexual reassignment. That's not something covered under our plan, and we would not pay that even if Blue Cross said it were medically necessary. So counsel had also mentioned that the plan. Well, if that's the case, then you haven't completely delegated the responsibility. The plan trustees, if I understand what you just said, retain the ultimate authority in their fiduciary capacity as trustees of the plan to adjudicate a medical necessity determination on behalf of a beneficiary, notwithstanding the administrator's recommendation as to how that should be decided, by looking at the terms of the plan, right? Well, in that example, there's an exclusion for that type of service, for that procedure. If I can get a yes answer to the first question, do the trustees still have the authority, despite hiring Blue Cross as the administrator, to refuse to pay on the ground that in the trustees' determination, the claim is not a covered claim under the plan? That's correct, and not a covered claim. That is correct. Regardless of what the administrator recommends. That's right. But we do accept the medical necessity determination. Well, if that's the case, then how can you say that the trustees don't belong in this arbitration in order to determine whether or not the last day of the hospital stay was medically necessary? Because that question, under the hospital's contract with Blue Cross, if the hospital is unhappy with Blue Cross's determination on medical necessity, the contract specifically provides that the hospital may arbitrate that issue with Blue Cross. It doesn't say that it can arbitrate it with other payers, which are defined under that contract as something other than Blue Cross. We are not Blue Cross, and that's part of what's going on here, is that the hospital Blue Cross is your agent. You have delegated a responsibility that the plan trustees could have kept to themselves if they thought they had the technical expertise to make those calls. But recognizing that plan trustees are not doctors, they hire medical professionals to help make medical necessity determinations. Right, but in this case, Blue Cross has its direct contract with the hospital, and the hospital has agreed under that contract that if we dispute your medical necessity determination, we will arbitrate that with you, not with the plan. You're in privity with Blue Cross. You're trying to tell me that there's no relationship whatsoever that can bind the plan trustees, and I'm not sure I'm buying it based on your answers to my question. Because ultimately, the only source of funds here is not Blue Cross, it's the plan. Either the plan is going to pay for this seventh day or not. Well, with the remaining time, if I could just tell you what happens. The council had said that we paid according to the CCHA, which we are not a party to. We, in fact, what we do when we get the claim back from Blue Cross, we look to see whether a penalty should be assessed. In this case, there was a penalty because preapproval was not obtained. We deduct co-insurance, we deduct co-pays. This was an emergent care. Are you saying that because the patient came in as an emergency patient, the hospital still had to get preapproval? In this case, as I understand it, there was a requirement for advance approval, and that was not obtained. Even in an emergency? That's not my understanding of how this arose, but I have to confess that I do not know if that's in the record, that this was an emergency. But ultimately, at the end of the day, what the hospital is doing here is it wants to be paid for the patient's last day. And that right, again, it springs from the plan, not from the CCHA. And the hospital, in an effort to bring this within the Blue Cross case, has characterized this as a dispute over the rates for a seven-day stay. But there's no dispute over the rates. We've accepted what Blue Cross said the per diem is, and we paid six days because we believe that – well, because Blue Cross certified those six as medically necessary. Okay. Thank you very much. Thank you both sides. I'll call them helpful arguments because you're clearly trying to help. I may be beyond help. I won't speak for my fellow panel members. Okay. Board of Trustees of the Laborers' Health and Welfare Trust Fund for Northern California versus Doctors' Medical Center of Modesto is now submitted for decision.
judges: Nelson, Fletcher, Tallman